UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WAKETTA J.,[1] | ) |
| *Plaintiff*, | ) |
| v. | ) No. 1:21-cv-824-MG-RLY |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
| *Defendant.* | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In October 2018, Plaintiff Waketta J. applied for applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of August 1, 2018. [Filing No. 13-5 at 2-8.] Her applications were initially denied on May 3, 2019, [Filing No. 13-3 at 2-12], and upon reconsideration on July 3, 2019, [Filing No. 13-3 at 14-25]. Administrative Law Judge Livia Morales (the "ALJ") conducted a hearing on April 2, 2020. [Filing No. 13-2 at 46-90.] The ALJ issued a decision on April 28, 2020, concluding that Waketta J. was not entitled to receive benefits. [Filing No. 13-2 at 29-37.] The Appeals Council denied review on February 2, 2021. [Filing No. 13-2 at 2-4.] On September 29, 2021, Waketta J. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 8.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Waketta J. benefits.

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

2

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Waketta J. was 34 years old on August 1, 2018—the date of her alleged onset of disability. [Filing No. 13-3 at 2; 14.] She has at least a high school education and has past work experience as CNA. [Filing No. 13-6 at 6.] Waketta J.'s original application alleges that she can no longer work because she has multiple fractures of pelvis, laceration of liver, and contusion of her lung. [Filing No. 13-6 at 5.] Following the April 2, 2020 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Waketta J. was not disabled. [Filing No. 13-2 at 29-37.] Specifically, the ALJ found as follows:

- At Step One, Waketta J. has not engaged in substantial gainful activity[3] since August 1, 2018 (the alleged onset date). [Filing No. 13-2 at 31.]

- At Step Two, Waketta J. "has the following severe impairments: obesity and history of poly trauma, including pelvic ring and sacral fracture and right knee dislocation, due to a motor vehicle accident in August 2018 status post spanning external fixator placement and removal and right knee reconstruction surgery in February 2019." [Filing No. 13-2 at 31.]

- At Step Three, Waketta J. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 31.] The ALJ specifically considered Listings 1.02

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- (Major Dysfunction of a Joint(s)), 1.03 (reconstructive surgery or surgial arthrodesis of a major weight-bearing joint), 1.06 (fracture of the femur, tibia, pelvis, or one r more of the tarsal bones), 1.07 (fracture of an upper extremity), and 1.08 (soft tissue injury). [Filing No. 13-2 at 32.]

- After Step Three but before Step Four, Waketta J. had the RFC "to perform light work as defined in 20 CFR 404.1567(a) except she can stand and walk 2 hours in an 8-hour day. She would need to stand for 5 minutes after sitting for one hour. She would need a cane or rolling walker to ambulate. She can operate foot controls with the right foot occasionally. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights and can work around moving mechanical parts occasionally. She can operate a motor vehicle occasionally." [Filing No. 13-2 at 32.]

- At Step Four, Waketta J. is unable to perform any past relevant work. [Filing No. 13-2 at 36.]

- At Step Five, relying on the VE's testimony and considering Waketta J.'s age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that she can perform, such as telephone quotation clerk, document preparer, and parimutuel-ticket checker. [Filing No. 13-2 at 36-37.]

## III.
## DISCUSSION

Waketta J. argues that: (1) the ALJ's subjective symptom analysis did not comply with SSR 16-3p by relying too heavily on objective evidence and by dismissing the opinion of Dr. Riff; and (2) the ALJ erred in evaluating the VE's testimony and the significance of the number of available jobs at Step Five.

**A. Subjective Symptom Analysis**

Waketta J. argues that the ALJ placed too much emphasis on decreased pain levels, despite her described continuing and persistent issues with stiffness and patellar pain. [Filing No. 17 at 12.] She argues the ALJ emphasized her improvements, noting low pain ratings in the record, but argues her stiffness and fatigue continued to hinder her. [Filing No. 17 at 13.] Further, Waketta J.

5

argues the ALJ failed to develop the record with more recent opinions of continued issues instead of relying on objective evidence that pointed only to decreased pain. [Filing No. 17 at 13-14.] Lastly, she argues that the ALJ failed to evaluate her reports of continued issues and the time off-task and absenteeism limitations noted by Dr. Riff's opinions, warranting further consideration of this opinion on remand. [Filing No. 17 at 14.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, the ALJ must provide specific reasons supporting his or her evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2017 WL 5180304, at *1. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or

mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3.

If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ must consider all the evidence in the record to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* at *4. When assessing credibility of a claimant's symptom testimony, the ALJ also considers the factors set forth in 20 C.F.R. § 416.929(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted). And, "[n]ot all of the ALJ's reasons must be valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

The Commissioner contends that the ALJ's subjective symptom analysis was thorough enough to satisfy the 16-3p requirements. [Filing No. 18 at 14.] The Commissioner argues the relevant objective evidence in the record shows that Waketta J.'s injuries improved in the months following her August 2018 car accident. [Filing No. 18 at 10.] The Commissioner then contends that the ALJ was not penitently wrong in finding that Waketta J.'s reported symptoms were inconsistent with the evidence in the record, because the record showed few abnormalities regarding her physical abilities by fall and winter 2019. [Filing No. 18 at 14-15.] The Commissioner next argues that while the ALJ relied on objective medical evidence, she did not consider only these records in her analysis, and fully considered Waketta J.'s references to pain and stiffness. [Filing No. 18 at 16.] Further, the Commissioner contends Waketta J. does not argue the ALJ erred in her evaluation of the objective medical evidence and does not argue any additional limitations the ALJ should have included in her RFC, nor does she present other objective evidence that supports additional limitations. [Filing No. 17 at 16-17.]

1.   **Objective Medical Evidence**

The ALJ considered the objective medical evidence and Waketta J.'s own statements regarding her symptoms. The ALJ began by stating that Waketta J.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [Filing No. 13-2 at 33.] The ALJ then noted, Waketta J.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 13-2 at 33.]

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *5. However,

an ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* "In evaluating an individual's symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement … that [the allegations are (or are not) supported or consistent.'" *Id.*

At her hearing, Waketta J. testified generally her "back pelvis", hamstring, and knee, continue to be an issue with daily stiffness and pain typically at a 2 to 2.5 out of 10 severity level, which increases to 5 after physical therapy and certain activities such as grocery shopping. [Filing No. 13-2 at 63-65.] Further, she estimated she could stand for 10-15 minutes, walk for 6 minutes, and sit for 15-20 minutes. [Filing No. 13-2 at 66-69.] Waketta J. testified that her symptoms were so severe in the winter she was bed-ridden for a few days per week. [Filing No. 13-2 at 72.]

The ALJ observed that "[d]espite sustaining severe injuries, the claimant improved with treatment, which included physical therapy. She generally reported low levels of back and knee pain at physical therapy sessions." [Filing No. 13-2 at 33.] The ALJ considered that Waketta J. "reported in her December 2018 function report that she used a walker and brace/splint at all times but testified that she currently only occasionally uses a walker about three days per week depending on her pain levels and started weaning herself off it in June or July of 2019."[Filing No. 13-2 at 34.] However, the ALJ noted an inconsistency with this statement, where "since January 2019, the medical records only document a few instances where the claimant was using a walker at medical appointments, and at a medical appointment in January 2019, it was noted that the claimant was ambulating with a knee brace." [Filing No. 13-2 at 34.] In addition, the ALJ noted that "[a]t a 5-month follow-up appointment in July 2019 following her right knee surgery, the claimant rated her symptoms at only a 1 of 10 in intensity. It was noted that she was continuing to

make good progress with improved pain. She was in no apparent distress […]." [Filing No. 13-2 at 34.]

The ALJ also considered the treatment measures that Waketta J. underwent. The ALJ observed that "[p]hysical therapy notes from June 2019 provide that the claimant had mostly stopped assistive device use but continued to have an asymmetrical gait (20F/73). Even with assistive device use, the claimant is able to perform the jobs identified below." [Filing No. 13-2 at 34.] Further, "[a]t a December 2019 physical therapy session for right knee pain and ambulation difficulties, the claimant reported only intermittent stiffness and had met most of her goals, which included demonstrating a symmetrical and non-antalgic gait pattern without an assistive device and reporting an ability to ambulate community distances with pain levels of less than 3/10." [Filing No. 13-2 at 34.] The ALJ then noted that "[d]uring a physical therapy session in December 2019, the claimant reported only a little bit of difficulty with multiple tasks, such as walking between rooms and standing for one hour, no difficulty performing light activities around the home, and moderate difficulty performing heavy activities around the home." [Filing No. 13-2 at 34.]

The ALJ also reviewed Waketta J.'s daily activities. *See Burmester v. Berryhill*, 920 F.3d 507, 501-11 (7th Cir. 2019) (considering the claimant's performance of daily activities as a factor when discounting the credibility of her symptom testimony). The ALJ noted that Waketta J. "testified that she cooks, does the dishes, and goes grocery shopping but leans on the cart, takes her daughter along to assist her, and takes 5-minute breaks." [Filing No. 13-2 at 35.] The ALJ then noted that Waketta J. testified she "completes her daily activities at a slow pace, tries to do as much housework as possible but that it is hard, such as with bending to do laundry, and needs assistance with household tasks 'for the most part'." [Filing No. 13-2 at 35.]

Lastly, the ALJ discussed medical source opinions. Because Waketta J. filed her application after March 2017, 20 C.F.R. § 416.920c governs her claim. Under this framework, ALJs will evaluate all medical opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c. The opinion of a claimant's treating physician no longer receives controlling weight. 20 C.F.R. § 416.920c(a). "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (internal quotation marks omitted). These are the factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 416.920c(b).

For an opinion to be "supportable," it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Similarly, for an opinion to be "consistent," it must be, reductively, consistent with the record. 20 C.F.R. § 416.920c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

State agency medical consultants, Drs. Ruiz and Corcoran, opined that Waketta J. "was limited to a light exertion level except for standing/walking for 2 hours and occasional pushing/pulling with the right lower extremity and had some postural and environmental

11

limitations, including no concentrated exposure to wetness and vibrations." [Filing No. 13-2 at 35.] Next, the ALJ considered Dr. Riff's opinion in a physical assessment form from April 2019, where he observed that Waketta J. "had some functional limitations, including unscheduled breaks of 10 – 15 minutes every 1 – 2 hours, occasionally lifting 20 pounds, standing/walking for 1 hour in an 8-hour workday, and 3 – 4 work absences per month; he later cleared her to work in July 2019 in a sedentary versus light duty capacity." [Filing No. 13-2 at 35.] The ALJ found that Dr. Riff's opinions were partially persuasive and somewhat consistent with the substantial evidence of record, but the record did not support unscheduled breaks, work absences, or standing/walking for only 1 hour, noting that Waketta J. continued to improve after Dr. Riff's April 2019 opinions were rendered. [Filing No. 13-2 at 35.] The ALJ noted findings at a July 2019 exam with Dr. Riff which noted a rating of 1/10 for symptoms, and a further December 2019 physical therapy session for right knee pain and ambulation issues, where Waketta J. reported intermittent stiffness, but she had met most of her goals. [Filing No. 13-2 at 36.]

Ultimately, Waketta J. does not argue the ALJ failed to evaluate the objective medical evidence, merely that the ALJ put too much weight on her improvement and did not properly contrast this with her subjective statements regarding continued pain. [Filing No. 17 at 18.] However, the ALJ's evaluation of objective medical evidence properly took into consideration Waketta J.'s subjective statements and properly evaluated their consistency. Further, Waketta J. does not provide this Court with any additional limitations the ALJ should have included in her RFC assessment, or any objective evidence that supports additional limitations. *See Dudley v. Berryhill*, 773 F. App'x. 838, 842 (7th Cir. 2019).

    **2.**     **Failure to Order Consultative Examination**

Waketta J. argues that the ALJ should have ordered a consultative examination before concluding that the RFC was sufficient. [Filing No. 17 at 14.] Waketta J. supports this claim in a single line, stating "[a]ll the opinions of record were dated in April and June 2019 even though the ALJ did not issue her decision until a year later on April 28, 2020." [Filing No. 17 at 14.]

The Commissioner argues that "the record was adequately developed, [Waketta J.] failed to make any argument that there was any new evidence in the record following April or June 2019, and no authority required the ALJ to hire another doctor in these circumstances." [Filing No. 18 at 12.] The Commissioner argues that the decision to consult a medical expert is within the ALJ's purview, and an ALJ is not required to seek such an opinion, notably because Waketta J. was represented by counsel throughout the process and could have, but did not, obtain a medical opinion or ask the ALJ to recontact the consultants. [Filing No. 18 at 11-13.]

An ALJ is not required to seek the opinion of additional medical experts, and the decision to summon a medical expert is discretionary. *See* 20 C.F.R. § 416.927(e)(2)(iii). While Dr. Riff's opinions did pre-date some of the medical evidence in the record, an ALJ is required to obtain an updated opinion of a medical expert only when "additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the [impairment] is not equivalent in severity to any impairment in the Listing of Impairments." *Graves v. Astrue*, No. 1:11-CV-249-SEB-DKL, 2012 U.S. Dist. LEXIS 129985, 2012 WL 4019533, at *3 (S.D. Ind. Sept. 11, 2012) (quoting SSR 96—6p, 1996 SSR LEXIS 3). Moreover, Waketta J. does not identify new evidence in the record which would have changed the ALJ's findings.

13

Thus, the Court finds that the ALJ considered all the evidence cited by Waketta J. and was not required to hire another consultant in these circumstances. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

### B. VE's Testimony and DOT Jobs

Waketta J. advances an additional argument that the ALJ is responsible for providing evidence demonstrating work exists in significant numbers at Step Five, but the DOT jobs that the VE opined that Waketta J. can perform only amounted to a low number. [*See* Filing No. 17 at 10-12.] Waketta J. further argues that the microfilming document preparer job the VE posited she could perform is anachronistic and more akin to a light-exertion position of photocopying-machine operator—and the VE dismissed availability of light work based on the ALJ's hypothetical. [Filing No. 17 at 12.] Waketta J. argues the ALJ should have investigated the conflict between the microfilming document preparer (sedentary) and photocopying-machine operator (light) positions as part of her burden of providing substantial evidence in support of her conclusion. [Filing No. 17 at 11-12.]

The Commissioner argues that Waketta J.'s argument that the VE described a photocopying-machine operator position instead of the document preparer job fails, because she cites to no evidence in the record that this was the case. [Filing No. 18 at 18.] The Commissioner contends the VE repeatedly testified he identified only sedentary level positions. [Filing No. 18 at 18.] Further, the Commissioner argues an ALJ may permissibly rely on a VE's testimony regarding job numbers, and no one contradicted or questioned the VE's foundation or reasoning. [Filing No. 18 at 18-19.] Because the VE identified 18,000 jobs in the national economy, the Commissioner argues Waketta J.'s argument that 10,000 jobs is usually required, this number is sufficient. [Filing No. 18 at 19.]

ALJs rely on VEs to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).; *see also*, *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020). An ALJ may only rely on VE testimony that is reliable. *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016) (citing *Overman v. Astrue,* 546 F.3d 456, 464 (7th Cir.2008); *Britton v. Astrue,* 521 F.3d 799, 803 (7th Cir.2008)). The Seventh Circuit has held that an ALJ may rely upon a VE's testimony about job numbers, "[w]here, as here, the VE identifies a significant number of jobs the claimant is capable of performing and this testimony is uncontradicted (and is otherwise proper), it is not error for the ALJ to rely on the VE's testimony." *Liskowitz v. Astrue,* 559 F.3d 736, 746 (7th Cir. 2009); *Donahue v. Barnhart,* 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion").

In the context of evaluating the reliability of a VE's testimony regarding job-number estimates, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." *Brace*, 970 F.3d at 821 (quoting *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018) (internal quotations omitted). "[A] finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Chavez*, 895 F.3d at 968 (citing *Britton* 521 F.3d at 803). While Congress gives the SSA sufficient flexibility in approaching the job-number estimation, any method the agency uses "must be supported with evidence sufficient to provide some modicum of confidence in its reliability." *Id.* at 969.

If a VE's testimony supplements and does not conflict with the DOT, a claimant "forfeit[s] [her] arguments by failing to object to the testimony during the administrative hearings. *Brown v.*

*Colvin*, 845 F.3d 247, 254 (7th Cir. 2016). However, if a VE's "testimony appears to *conflict* with the DOT, the ALJ must obtain a reasonable explanation for the apparent conflict, and [] a claimant's failure to object during a hearing cannot excuse an ALJ's failure to do so." *Id.* at 255 (quoting *Overman*, 546 F.3d at 462-63 (internal quotations omitted); *see also* S.S.R. 00-4p (requiring the ALJ to identify and explain any conflict between the DOT and VE testimony). The ALJ's "duty to inquire arises only when the conflict between the DOT and VE testimony is apparent." *Id.* at 463-64.

In the present case, the VE testified that there were approximately 18,000 jobs in the national economy that a person with Waketta J.'s functional limitations would be capable of performing (telephone quotation clerk – 3,400 jobs, document preparer – 13,900 jobs, and parimutuel-ticket checker – 1000 jobs). [Filing No. 13-2 at 85.] The VE then stated his testimony was consistent with the DOT, except that the DOT does not address use of a cane or walker, or a standing for five minutes every hour. [Filing No. 13-2 at 87-88.] The ALJ determined that the vocational expert's testimony was consistent with the information contained in the DOT and to the extent his testimony "concerned a limitation not addressed by the DOT," the ALJ found that this testimony "was based on the vocational expert's professional experience, training and education". [Filing No. 13-2 at 37.] Further, the ALJ noted the identified jobs do not require more than 5 to 10 minutes of standing at a time, and assistive device usage would not interfere with essential functions of these jobs. [Filing No. 13-2 at 37.]

Waketta J.'s attorney posed additional hypotheticals, including a limitation regarding no crouching, no kneeling, no crawling, for every 30 minutes of sitting, this individual would need to stand and stretch away from the workstation for five minutes, and the individual would be absent as much as three to four days per month. [Filing No. 13-2 at 88-89.] The VE opined that the result

16

would be the person would be terminated, so these limitations would be work preclusive. [Filing No. 13-2 at 88-89.] However, Waketta J.'s counsel did not appear to challenge the VE's testimony regarding methodology, and thus his testimony could satisfy the substantial evidence standard. *Biestek,* 139 S. Ct. at 1152-53; *Chavez,* 895 F.3d at 970. Moreover, to the extend Waketta J. contends that without the document preparer job is unavailable and the remaining 4,400 jobs does not constitute a significant number of jobs int he national economy, this circuit has found that as little as 1,000 jobs constitutes a significant number. *Weatherbee,* 649 F.3d at 572 (citing *Liskowitz,* 559 F.3d at 743).

Therefore, the record contains competent evidence from the VE that significant jobs exist in the national economy that Waketta J. could perform and the ALJ did not err in accepting the VE's estimates.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Waketta J. benefits. Final judgment will issue by separate entry.

Date: 9/30/2022

                                            Mario Garcia
                                            United States Magistrate Judge
                                            Southern District of Indiana

**Distribution via ECF to all counsel of record.**